## Sullivan v. Commonwealth.

(Decided Oct. 12, 1934.)

O. B. BERTRAM for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The grand jury of Russell county returned an indictment against appellant and defendant below, Charlie Sullivan, and six others, accusing them of committing

the offense denounced by section 1164 of our present Statutes; i. e., that of storehouse breaking. Appellant was convicted and punished by confinement in the penitentiary for three years at his separate trial thereunder. This is an appeal by him after his motion for a new trial was overruled.

But slight reference is made in brief of appellant's counsel to any of the grounds contained in the motion for a new trial as alleged errors, except the one that the evidence is insufficient to sustain the verdict, and it is based upon the contention that the testimony of two of appellant's accomplices, who gave convincing guilty testimony at the trial, was not corroborated as required by section 241 of the Criminal Code of Practice. None of the other grounds are even slightly material, and the perfunctory reference to them in brief confirms the conclusion that counsel so regarded them, and with which we agree. Therefore we will confine our discussion exclusively to the indicated ground argued by counsel, and which will require a brief statement of the substantial facts.

On March 1, 1932, and prior thereto, S. S. Jones conducted a mercantile business in the village of Lula, in Russell county. On the night of that day his storehouse and contents were burned. He had gone to Lexington for the day, and had not returned at the time of the burning, but he left his store in charge of his son, who at the time of closing it that night fastened all of its entrances, including the windows. The two accomplices in the indictment who testified for the commonwealth completely established the charge in the indictment, and stated that at the time of the breaking and setting fire to the building they were placed on the road passing in front of the store as guards and lookouts, one of them stationed in one direction from the store, and the other in the opposite one; that from where they were located they could not see the door of the storehouse, but they heard rattling and noises indicating the breaking of the glass and made by efforts to gain entrance into the building; that shortly thereafter the other accomplices, including appellant, came from the store with goods in sacks carried by all or some of them who actually participated in the commission of the crime. Other witnesses for the commonwealth testified to seeing the defendants in the indictment traveling in the

road towards the store shortly preceding the fire, and at the time none of them carried any packages or bundles. Still other witnesses testified that, after the store was robbed, and after it was set on fire, they saw some of the accused, one of whom was appellant, carrying sacks full of something, and a part of which was later proven to be cartridges and goods such as was carried in the store. Other witnesses testified that they stationed themselves near a cedar thicket and observed appellant and perhaps another of his accomplices enter it and later emerge therefrom with a sack or sacks similar to those seen by the witnesses immediately following the commission of the crime.

An illustration of the testimony introduced by the commonwealth is that of the witness Becky Brown, who was on the evening of the crime at the home of Jodie Wilkerson, who also testified for the commonwealth substantially the same as did she. The latter stated in substance that she was in the yard of Mr. Wilkerson when the defendants in the indictment, including appellant, passed in the road in front of the house, and that "I heard them talking about stuff that had come out of the store." Wilkerson, in addition, stated that he saw the parties prior to that time traveling the road in the direction of the store, and that appellant was a member of the crowd. There were other facts and circumstances which dovetail together and unerringly lead to the conclusion that appellant and his codefendants in the indictment committed some act on that occasion whereby they became possessed of goods, wares, and merchandise that they carried in their sacks, and the testimony we have related, as given by witnesses who were not accomplices, was and is sufficient to authorize the conclusion beyond a reasonable doubt that the property so carried came from Jones' store.

But it is strenuously argued at this point (and this is the chief reliance for reversal) that a breaking of the building by the accused is an essential element of the crime, and that the testimony given by nonaccomplice witnesses at the trial was not sufficient to establish that necessary element, or to create the required corroboration of the accomplice witnesses. But we are unable to accept that argument. The storehouse and its contents were practically destroyed by the fire, which no doubt was set by defendants in the indictment. It was, there-

fore, impossible to prove any physical facts establishing the breaking. However, as we have seen, there was sufficient corroborating evidence that defendants obtained goods and merchandise from the store. There was uncontradicted testimony that the building was locked and all apertures fastened a comparatively short while before the fire was discovered. That condition made it necessary for one entering the building to commit some sort of breaking required by the statute creating the offense, and under the circumstances the jury were fully authorized to infer that the one or ones later in possession of the contents of the store (as was also authorized to be inferred) were guilty of such necessary breaking, so as to comply with the requirements of the section of the statute referred to.

Appellant did not testify at the trial, nor did he introduce any defensive testimony, and, while we may not draw any guilty inference from his failing to take the stand, yet we are not forbidden the privilege of wondering why appellant did not introduce other testimony establishing his innocence and contradicting as best he could the guilty circumstances so clearly proven by the commonwealth. Any one familiar with human conduct and the ability to discern motives prompting it cannot read this record without arriving at the inescapable conclusion that the testimony, exclusive of that given by the accomplices, fastens guilt upon the appellant. That being true, the court did not err in overruling his motion for a directed verdict of acquittal nor in overruling the motion for a new trial.

Wherefore the judgment is affirmed.